**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X

ELLEN BOCCIO,

                          Plaintiff,                  **MEMORANDUM AND ORDER**

    -against-                                   **18-CV-04317 (ST)**

COSTCO WHOLESALE CORPORATION,

                          Defendant.
----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On March 16, 2018, Plaintiff Ellen Boccio ("Plaintiff") brought this action for personal injuries against Defendant Costco Wholesale Corporation ("Defendant") originally in the Supreme Court of the State of New York, County of New York.  On July 13, 2018, Defendant removed this action to United States District Court for the Eastern District of New York.  Now before this Court are (1) Defendant's Motion to Preclude Plaintiff's expert, Frederick G. Bremer ("Bremer"), report and testimony; (2) Plaintiff's Motion for Sanctions for Defendant's alleged spoliation of video evidence; and (3) Defendant's Motion for Summary Judgment to dismiss the Complaint for Plaintiff's failure to establish a prima facie case of negligence.

For the below stated reasons, this Court (1) denies Defendant's Motion to Preclude Plaintiff's expert report and testimony; (2) denies Plaintiff's Motion for Sanctions against Defendant; and (3) denies Defendant's Motion for Summary Judgment.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff, an individual female, is a resident of Suffolk County, New York.  Not. of Removal, Ex. A, Compl. ¶ 1, Dkt. No. 5.

Defendant is a domestic corporation with its principal place of business in Washington State.  Not. of Removal ¶ 3.  Defendant owned and operated a retail store located in Suffolk County, New York ("Store").  Not. of Removal, Ex. A, Compl. ¶¶ 5-6, Dkt. No. 5.

On November 19, 2017, between 10:00 a.m. and 10:30 a.m., Plaintiff allegedly fell and sustained injuries while shopping for, among other items, Christmas cards at Defendant's Store. *Id*. ¶ 7; Pl.'s Mot. for Sanction, Mem. of Law at 3.  According to Plaintiff, when she approached the section of the Christmas cards on display, several of the cardboard boxes that contained the Christmas cards allegedly fell on her, causing her to fall on her back and buttocks to the ground. Pl.'s Mot. for Sanction, Mem. of Law at 4.  As a result of the fall, Plaintiff claims she fractured her lumbar vertebra.  Def.'s Mot. for Summary Judgment, Pl.'s Interrogatories at 4; Ex. E.

Plaintiff claims that after her fall and while she was in pain, Defendant's employees, one female and one male, arrived at the scene.  *Id*. at 5.  Plaintiff admits that she told the female employee that she was "OK" and left the warehouse once her husband finished shopping.   Def.'s Opp. to Sanctions at 2, Dkt. No. 38.  Defendant claims that no such employees were identified by Plaintiff during the discovery period.  *Id*.  Defendant's Front-End Manager, Caren Bauernfeind, testified that if a member/customer reported an accident, a report was filled out as a matter of policy.  Pl.'s Mot. for Sanctions, Bauerfeind Transcript, Ex. 9 at 173, 8-24.  Defendant claims to have no record of this incident.  *Id*.

Plaintiff claims that she did not touch the Christmas cards prior to her fall.  Pl.'s Mot. for Sanction, Mem. of Law at 4.  Plaintiff testified that both the Christmas cards and the boxes on display were arranged haphazardly, and the display itself was top-heavy or over stacked.  *Id*. at 4.

On the other hand, Defendant alleges that the boxes, measuring approximately 12-14 inches cubed, were positioned side by side on the pallet and stacked four rows high.  Def.' Mot.

to Strike at 2.  The display reached a height of approximately five feet.  *Id*.  Each box was interlocked with the other boxes for added stability.  *Id*.  The front of each box was open so the individual packages of greeting cards could be seen inside.  Def.'s Mot. to Strike, Decl., para 15.  Defendant further argues that it did not design the display packages but only plugged them onto the salesfloor.  *Id*.

On January 25, 2018, over two months after Plaintiff's accident, Plaintiff mailed a letter to Defendant, which Defendant received on January 29, 2018.  Pl.'s Mot. for Sanction, Mem. of Law at 6.  In her letter, Plaintiff requested that Defendant "preserve and hold all surveillance video, security video and/or videotapes" for Defendant's Store location taken on the date of Plaintiff's accident on November 19, 2017, for the time period between 10:00 a.m. to 12:00 p.m.  *Id*.  The letter further informed Defendant that Plaintiff intended to start a lawsuit following her accident at the Store.  *Id*.  Defendant claims that it has no record of the accident because per the Store's policy, all surveillance videos were recycled after twenty-one days.  Def.'s Opp. to Sanctions at 2-3.  Since the "litigation hold" letter was received after the twenty-one-day preservation period, there was no video surveillance left to preserve.  *Id*.; Def.' Mot. to Strike at 2.

### B.  Procedural History

On March 16, 2018, Plaintiff brought this action for damages arising out of personal injuries originally in the Supreme Court of the State of New York, County of New York.  Dkt. No. 5.  On July 13, 2018, Defendant removed this action to United States District Court for the Eastern District of New York.  *Id*.

On August 28, 2018, Defendant served its first set of Interrogatories upon Plaintiff.  *See* Mot. to Strike, Interrogatories, Ex. D., Dkt. No. 31.  Plaintiff as well as her husband, Anthony

Boccio, and daughter, Michelle Boccio, appeared for depositions.  *See generally* Mot. to Strike;
Mot. for Sanctions; Mot. for Summary Judgment.  Plaintiff served Bremer's expert disclosure.
Subsequently, Bremer also appeared for a deposition.  *Id.*  Defendant's Night Floor Manager,
Matthew Rigoli, and Front-End Manager, Bauernfeind, appeared for depositions as well.  *Id.*

Now before this Court are (1) Defendant's Motion to Preclude Plaintiff's expert report
and testimony filed on April 15, 2021; (2) Plaintiff's Motion for Sanctions for Defendant's
spoliation of video evidence filed on June 10, 2021; and (3) Defendant's Motion for Summary
Judgment filed on August 10, 2021.  *See* Dkt. Nos. 31, 37, 45.

Even though Defendant's Motion to Preclude precedes Plaintiff's Motion for Sanctions,
pursuant to Plaintiff's request, this Court will first review Plaintiff's Motion for Sanctions and
then determine whether Plaintiff's expert report and testimony should be precluded.  *See* Pl.'s
Opp. to Mot. to Preclude, Mem. of Law at 1-2, Dkt. No. 33.  Finally, the Court will review
Defendant's Motion for Summary Judgment to determine whether any material issues of fact
exist and if Defendant is entitled to judgment as a matter of law.

## II.   PLAINTIFF'S MOTION FOR SANCTIONS

### A.  Legal Standard under Rule 37

Rule 37 empowers the courts to sanction parties for discovery-related abuses, including
spoliation.  Fed. R. Civ. P. 37(e).  Spoliation is defined as "the destruction or significant
alteration of evidence, or the failure to preserve property for another's use as evidence in pending
or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co*., 167 F.3d 776, 779
(2d Cir.1999); *Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya*, 248 F.R.D. 126,
143-44 (S.D.N.Y. 2007).   For sanctions under Rule 37(e), it must first be proved that the
evidence allegedly destroyed did in fact exist prior to its spoliation.  *Stephen v. Hanley*, No. 03–

CV–6226, 2009 WL 1437613, at 2 (E.D.N.Y. May 20, 2009).  Once it is proved that the relevant

evidence existed, sanctions for spoliating evidence under Rule 37(e) must meet "a three-part

inquiry".  *Doubleline Capital LP v. Odebrecht Finance, Ltd*., 17-CV-4576 (GHW) (BCM), 2021

WL 1191527 (S.D.N.Y. Mar. 30, 2021).  A party seeking sanctions for spoliation must establish:

> (1) that the party having control over the evidence had an obligation to preserve it
> at the time it was destroyed; (2) that the records were destroyed with a "culpable
> state of mind" and (3) that the destroyed evidence was "relevant" to the party's
> claim or defense such that a reasonable trier of fact could find that it would
> support that claim or defense.

*Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 430 (S.D.N.Y.2004) (citation omitted).

### B.  Discussion

#### 1.  Existence of Evidence

Plaintiff moves for sanctions for Defendant's failure to preserve the surveillance video of

Plaintiff's accident.   Pl.'s Mot. for Sanctions, Pl.'s Mem. of Law at 2, Dkt. No. 37.  Defendant

argues that Plaintiff has not shown that any such video existed.   Def.'s Opp. to Sanctions, Dkt.

No. 38.

"For sanctions to be appropriate, it is a necessary, but insufficient, condition that the

sought-after evidence actually existed and was destroyed." *Sachs v. Cantwell*, No. 10 Civ. 1663

(JPO) 2012 WL 3822220 at 7 (S.D.N.Y. Sept. 4, 2012) quoting *Farella v. City of New York*, No.

05 Civ. 5711, 2007 WL 193867 at 2 (S.D.N.Y. Jan. 25, 2007).  "Although there is no well-

established standard of proof for a finding that the "destroyed evidence" existed, the courts

routinely have declined to infer that evidence existed when presented with only circumstantial

supporting evidence." *Sachs*, 2012 WL 3822220 at 7.

In the context of video recordings, the courts have found that the mere presence of a

video camera does not establish that the camera was in place to record at the time, nor does its

presence establish that any recording was made at the time of the incident. *See Mohammed v. Delta Air Lines, Inc*., No. 08 Civ. 1405, 2011 WL 5553827, at 7 (E.D.N.Y. June 8, 2011) (denying sanctions for spoliation after the defendant's "sworn affidavit" confirmed that "there were no video cameras trained on the area where the [plaintiff's] accident occurred."); *United States v. Perez–Velazquez*, 488 F.Supp.2d 82, 85 (D.P.R.2007) ("[T]here has been no spoliation of evidence, as there is no proof that the surveillance camera found in plaintiff's apartment was connected to a recording device.").

Here, Plaintiff alleges that the video footages on the day of Plaintiff's fall existed before Defendant recycled them. *See generally* Pl.'s Mot for Sanctions.  In support of her argument, Plaintiff submits the letter dated January 25, 2018, wherein she requested that Defendant preserve all video surveillance from November 19, 2017.  Pl.'s Mot. for Sanction, Mem. of Law at 6.  Plaintiff points to the affidavit of Defendant's Assistant General Manager, Christopher Henze, who is familiar with Defendant's cameras and their locations at the subject Store.  Henze Aff. at 1-3.  Henze averred that as a matter of policy, Defendant preserved its video surveillance footages at the Store for a period of twenty-one days only.  Def.'s Opp. to Sanctions, Mem. of Law at 2-3.  As Plaintiff's request was over two months after such preservation period, Defendant claims it did not possess and/or preserve any videos from November 19, 2017.  *Id.*

While Plaintiff has shown that the video footages from the day of Plaintiff's accident existed, Defendant has not offered any support of its non-existence.  Defendant cites various cases to refute Plaintiff's allegations about the existence of the video evidence.  *Id.*  None of the cases apply here.  For example, in *Mohammed v. Delta Air Lines, Inc.*, the court denied sanctions against the defendant because the defendant affirmatively denied the plaintiff's allegations via a sworn affidavit that no video surveillance existed, and no video recordings were in place when

6

plaintiff got injured.  2011 WL 5553827, at 7.  Similarly, in *Sachs v. Cantwell*, the defendant provided a sworn affidavit that during the time of the plaintiff's altercation, the cameras did not work due to power loss, which is why the court did not warrant sanctions against the defendant. 2012 WL 3822220 at 7; *see also Kreyn v. Gateway Target*, No. CV–05–3175, 2006 WL 3732463, at 2 (E.D.N.Y. Dec. 17, 2006) ("As to the videotapes, the defendant flatly asserts that the stationery aisle of the defendant's premises [was] not videotaped on the day of the accident.). Amongst other inapplicable cases, Defendant also relies upon *Farella v. City of N.Y.*, where the plaintiff's motion for spoliation sanctions failed because they had no "evidence showing that the 'missing' evidence ever existed." No. 05-cv-5711, 2007 WL 193867, at 1–2 (S.D.N.Y. 2007). However, the facts in *Farella* are distinguishable from this case inasmuch as Plaintiff provides sufficient evidence to show that Defendant had multiple cameras at different locations throughout the Store.  *Id.*

In this case, Defendant did not affirmatively deny that the aisle in question had a video surveillance.  Defendants have neither offered any evidence directly from any individual who personally reviewed the footage to establish that Plaintiff's injury was not captured by the surveillance cameras, nor denied the existence of any video evidence in a sworn statement.  The only evidence offered by Defendants is the redacted affidavit of Henze who averred that he is familiar with Defendant store's cameras and their locations and states that since Plaintiff's request was made beyond the twenty-one-day preservation policy, "there was no surveillance from November 19, 2017, to preserve."  *See Gutierrez-Bonilla v. Target Corp.*, No. CV 08–3985(JS) (AKT), 2009 WL 5062116 at 6 (E.D.N.Y. Dec. 6, 2009) (holding that the plaintiff has not shown that the requested evidence would have supported her case in the face of sworn testimony, unrefuted by Plaintiff, that the store's video surveillance from July 4, 2006, did not

include any footage of the aisle in which the plaintiff fell).  Despite the fact that Plaintiff failed to further depose Henze or any other employee of Defendant with adequate knowledge of the camera locations at the Store, Plaintiff has shown that video evidence from November 19, 2017, did exist.  As such, Defendant fails to affirmatively deny the video's existence or provide any evidence to refute Plaintiff's allegations regarding the existence of the video footage from the day of Plaintiff's fall.

Thus, this Court determines that Plaintiff has shown that the video evidence existed.  The Court proceeds to analyze whether Defendant had an obligation to preserve any video evidence.

### 2.  Duty to Preserve

The next step is to decide if Defendant failed to take "reasonable steps" to preserve the evidence.  Fed. R. Civ. P. 37(e).   The obligation to preserve the evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).  Although the obligation to preserve the evidence commonly arises when the suit has already been filed, it can arise earlier when a party should have known that the evidence may be relevant to future litigation.  *Field Day, LLC v. Cnty. of Suffolk*, 2010 WL 1286622, at 4 (E.D.N.Y. Mar. 25, 2010) (quoting *Kronish v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

Pursuant to Defendant's policy, video surveillance footages were typically retained for a period of twenty-one days.  Plaintiff served a letter in January 2018 and initiated this action originally in the State Court in March 2018.  Thus, for Plaintiff to show that Defendant had a duty to preserve video footage from November 19, 2017, beyond twenty-one days, Plaintiff needs to establish that Defendant should have known that the video would be relevant to future

litigation.  *Simoes v Target*, No. 11 CV 2032 (DRH) (WDW), 2013 WL 2948083 at 3 (E.D.N.Y. June 14, 2013).

In situations where a party has knowledge that certain types of incidents tend to trigger litigation, courts within the Second Circuit have found that a duty to preserve relevant video footage may attach as soon as the triggering incident occurs and prior to when a claim is filed. *Taylor v. City of New York*, 293 F.R.D. 601 (S.D.N.Y. 2013).  In attaching the duty to preserve at the time of the incident, the courts typically consider whether the plaintiff sustained injuries, whether the plaintiff requested medical attention, whether the plaintiff filed an accident report, whether the plaintiff indicated the intention to file a lawsuit, and/or whether other incidents occurred that would undoubtedly make the defendant aware that the video evidence would likely be relevant to a future litigation.  *See e.g., Siggelko v. Kohl's Dep't Stores, Inc.*, No. 06 Civ. 2281(JS), 2009 WL 750173, at 3 (E.D.N.Y. Mar. 17, 2009) ("Assuming that Plaintiff suffered some injury, [...] Kohl's could have anticipated that Plaintiff would file a lawsuit shortly thereafter," given that the plaintiff had promptly filed an accident report); *Slovin v. Target Corporation*, No. 12 Civ. 863 (HB), 2013 WL 840865 at 3 (S.D.N.Y. Mar. 7, 2013) (holding that the obligation to preserve video footage of a customer's fall in a Target store attached "at the time of the accident" because "Target was undoubtedly aware immediately following the fall that the video would be relevant to future litigation."); *Kosmidis v. Port Authority of New York and New Jersey*, 18 Civ. 08413 (AJN) (RWL), 2020 WL 5754605 (S.D.N.Y. Aug. 27, 2020) (the plaintiff's refusal of medical attention at scene and subsequent absence of any threats of litigations as factors weighing against a finding that the defendant should have reasonably anticipated litigation in the context of spoliation).

Here, Plaintiff testified that when she was injured on November 19, 2017, she was in pain but informed Defendant's employees that she was "OK" and wanted to leave the store.  Pl.'s Mot. for Sanctions, Pl.'s Depo., at 55.  Defendant denied that any employee came to Plaintiff's help.  Def.'s Opp. to Motion for Sanctions at 2.  By Defendant's own admission, an accident reported by customers required the filing of an accident report, regardless of whether the customer had injuries.  Pl.'s Mot. for Sanctions, Bauerfeind Transcript, Ex. 9 at 173.  Since Plaintiff did not report any accident, Defendant claims it did not have any records.  Def.'s Opp. to Motion for Sanctions at 2.  Assuming that Plaintiff's description of events was accurate, it is evident that Plaintiff neither requested medical attention, nor reported any injuries.  *See generally* Pl.'s Mot. for Sanctions.  Plaintiff or her family members neither filed a complaint with Defendant, nor threatened to file a lawsuit at the time of the incident.  *Id.*  Even if Defendant's employees came to Plaintiff's aid, Plaintiff admitted to being "OK" and did not seek medical attention.  In any case, subsequent to her fall, Plaintiff and her daughter went to the parking lot and left the premises only once her husband finished shopping after checking-out all purchased items.  *Id.*

More than two months went by following Plaintiff's incident at the Store.  Subsequently, Defendant received Plaintiff's letter dated January 25, 2018, regarding Plaintiff's fall with a request that surveillance from November 19, 2017, be preserved.  Under these circumstances, it cannot be said that Defendant knew, or should have reasonably anticipated, that Plaintiff would subsequently file a lawsuit prior to receiving the January 25, 2018 letter.  *See Kosmidis,* 2020 WL 5754605 at 6 (the plaintiff's refusal of medical attention along with absence of any threats of litigations as factors weighing against a finding that the defendant should have reasonably anticipated litigation in the context of spoliation); *Kraus v. General Motors Corp.*, No. 03 Civ.

4467 (CM), 2007 WL 3146911 at 2-3 (the defendant had no duty to preserve car as evidence in products liability suit before complaint was filed because it had not been previously notified of any injury that might reasonably lead to litigation and no litigation had been threatened).

Thus, this Court determines that Defendant's duty to preserve the video evidence did not arise until January 25, 2018.

### 3.  Culpable State of Mind

Assuming that Defendant was under an obligation to preserve the video, the second step would then be to decide if Defendant had a culpable state of mind.  In this Circuit, the 'culpable state of mind' factor is satisfied by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or negligently.' *Simoes*, 2013 WL 2948083 at 4; *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d. Cir. 2002).

Importantly, "once the duty to preserve attaches, any destruction of relevant evidence is, at a minimum, negligent." *Kosmidis*, 2020 WL 5754605 at 5; *Taylor v. City of New York*, 293 F.R.D. 601, 612 (S.D.N.Y. 2013) (quoting *Slovin v. Target Corp.*, No. 12 Civ. 863, 2013 WL 840865, at *4 (S.D.N.Y. March 7, 2013)) (alterations omitted).  In this case, if Plaintiff could show that Defendant was on notice of her purported negligence claim and failed to preserve crucial video footage, that would likely be sufficient to show negligence.  *See Poux v. Cnty. of Suffolk*, No. 09 CV 3081, 2012 WL 1020302, at *20 (E.D.N.Y. Mar. 23, 2012) (concluding that if defendant had an obligation to preserve videotapes, its conduct in recycling those tapes pursuant to a tape retention policy was, at most, negligent).  However, "[in the absence of pending litigation or notice of a specific claim, a defendant should not be sanctioned for discarding items in good faith and pursuant to its normal business practices." *Gutierrez-Bonilla*, 2009 WL 5062116 at 4 (internal quotation marks and citation omitted).

In any case, the evidence would not be sufficient to find gross negligence.  The Second Circuit has rejected the notion that a failure to institute a 'litigation hold' constitutes gross negligence per se.  *See Lacey v. Target Corp.*, 13-CV-4098 (RML), 2015 WL 2254968 at 6 (E.D.N.Y. May 13, 2015).

Thus, since Defendant's duty to preserve the video evidence did not arise until January 25, 2018, Plaintiff has failed to establish that Defendant had a culpable state of mind for discarding items in good faith and pursuant to its normal business practices.

### 4.  Relevance

Next, the moving party must demonstrate that the evidence destroyed was relevant to its claim.  *Simoes*, 2013 WL 2948083 at 6; *Gutierrez*, 2009 WL 5062116 at 5-6.

Where the breach of discovery obligations is based on negligence, it must be shown that the information sought is relevant such that a reasonable trier of fact could find it would support that claim or defense.  *See In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (quoting *Residential Funding*, 306 F.3d at 108).   The moving party "bears the burden of showing that there is a 'likelihood that the destroyed evidence would have been of the nature alleged.'" *Hamilton v. Mount Sinai Hosp.*, 528 F.Supp.2d 431, 444 (S.D.N.Y.2007) (citations omitted).  Where the spoliation is done with negligence, whether sanctions are warranted depends upon the circumstances of the case.  *Id.* (citing *Residential Funding*, 306 F.3d at 108; *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 267 (2d Cir.1999)).  If the spoliator's state of mind is insufficient to show that the missing evidence was favorable to the moving party, the moving party may submit other proof tending to demonstrate that the missing evidence would have been favorable to it.  *See In re WRT Energy Securities Litigation*, 246 F.R.D. 185, 198 (S.D.N.Y. 2007).

Here, Plaintiff vigorously argues that the lost recording was relevant because it would have captured her fall and was probative as to Defendant's liability.  Plaintiff alleges that by recycling the videos from November 19, 2017, Defendant has deprived her of the ability to prove the required element of notice to establish a prima facie case of negligence.  Assuming that the video preceding Plaintiff's fall would have indicated the box of Christmas cards struck Plaintiff as alleged, it would not warrant sanctions, particularly since Defendant did not recycle the video with a culpable state of mind.  This court exercises its powers within its discretion to require some proof that the missing evidence would have corroborated Plaintiff's claims.  *See In re WRT Energy Securities Litigation*, 246 F.R.D. at 198.  Such proof cannot be inferred from Defendants' conduct, because there was no independent, circumstantial evidence that the video would have shown what Plaintiff claims it showed.  *Id*.

Further, such video evidence could have been favorable to either party's case.  *See Simoes*, 2013 WL 2948083, at 7 (relevance element not satisfied where missing surveillance video could have been favorable to either party's case).  For instance, while it is possible that the recycled video would have shown that Christmas cards were negligently stacked up, it could also show that the display moved just moments before Plaintiff's fall or that another employee or customer could have accidently bumped into the display from the opposite side.  *Id.*  The recycled video could have shown that no other customers, including Plaintiff's husband and daughter fell while traversing the same area where Plaintiff's incident occurred.  *Id.*; *see also* Def.'s Opp. to Mot. for Sanctions at 13.

Thus, this Court determines that Plaintiff has not shown that the evidence sought was relevant to support Plaintiff's claims.

### C. Inherent Powers

If sanctions under Rule 37(e) are not warranted, the court could nonetheless fashion an appropriate relief under its inherent power. *CAT3, LLC v. Black Lineage, Inc*., 164 F.Supp.3d 488, 497 (S.D.N.Y.). The Court's inherent powers serve to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants. *Id.* "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The inquiry for inherent power sanctions is highly fact specific. *Id.* "Although not capable of precise definition, clear and convincing evidence has been described as evidence which produced in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.' *Riley v. City of New York*, No. 10–CV–2513 (MKB), 2015 WL 541346 at 7 (E.D.N.Y. Feb. 10, 2015).

To impose sanctions pursuant to its inherent power, a court must find that: (1) the challenged conduct was without a colorable basis, i.e., the challenged conduct is utterly devoid of a legal or factual basis; and (2) the conduct was in bad faith, i.e., motivated by improper purposes such as harassment or delay. *Offor v. Center*, 15-cv-2219 (ADS) (SIL), 2016 WL 3566217 at 2 (E.D.N.Y. June 25, 2016); *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012). This bad faith requirement is a 'high bar to satisfy." *Fischer v. Verizon New York, Inc.*, 18-cv-11628 (RA) (OTW), 2020 WL 5117913 at 6 (S.D.N.Y. Aug. 31, 2020). In order to make a finding of bad faith, a court must: "(1) find that the challenged actions were taken for improper purpose, such as harassment or delay; and (2) provide a high degree of specificity in the factual findings." *Id.*

Here, this Court determines that sanctions under its inherent powers are not warranted. Defendant's conduct under challenge, i.e., failure to retain video surveillance from November

19, 2017, is not entirely devoid of law or facts.  As discussed above, Defendant was not aware and did not have any reason to anticipate this litigation prior to January 25, 2018, when Plaintiff served her "litigation hold" letter.  Further, Plaintiff has offered no proof to show that Defendant acted with bad faith by not preserving the subject video.

Thus, sanctions under this Court's inherent powers are not warranted against Defendant.

Therefore, this Court denies Plaintiff's Motion for Sanctions against Defendant under Rule 37 because Plaintiff has not shown (1) that Defendant had a duty to preserve any video evidence prior to receiving Plaintiff's "litigation hold" letter in January 2018; (2) that Defendant had a culpable state of mind in failing to preserve any video evidence from the day of Plaintiff's fall; and (3) that the video was relevant to support Plaintiff's claims.  This Court also denies sanctions under its inherent powers because Plaintiff has not shown that Defendant acted without a colorable basis and in bad faith.

## III.   DEFENDANT'S MOTION TO STRIKE PLAINITFF'S EXPERT REPORT AND TESTOMONY

### A.  Legal Standard

The Supreme Court has held that the admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides that:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm.*, Inc., 509 U.S. 579, 590, 113 S. Ct. 2786, 2795 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S. Ct. 1167, 1175 (1999); *Lara v. Delta Int'l Mach. Corp.*, No. 13-cv-6259, 2016 WL 1254023, at 5

(E.D.N.Y. Mar. 31, 2016) (explaining the applicable standards).  As the Second Circuit has observed, "Rule 702 embodies a liberal standard of admissibility for expert opinions...." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  Nevertheless, under *Daubert* and its progeny, courts maintain "a 'gatekeeping responsibility' of 'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Rodriguez v. British Airways PLC*, No. 17-cv-03691, 2017 WL 6372733, at 3 (E.D.N.Y. Dec. 12, 2017) (quoting *Daubert*, 509 U.S. at 597, 113 S. Ct. at 2799).

In evaluating whether to admit expert testimony, the court must consider whether: (i) the witness is qualified as an expert on the topic at issue; (ii) the expert's opinion is based on reliable data and methodology; and (iii) the expert's opinion will assist the trier of fact.  *Nimely*, 414 F.3d at 396-97.  "The proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the testimony is competent, relevant, and reliable." *SourceOne Dental, Inc. v. Patterson Companies, Inc.*, No. 15-cv-5440, 2018 WL 2172667, at 1 (E.D.N.Y. May 10, 2018).  Ultimately, the question of admissibility is left to the sound discretion of the trial court.  *Lara*, 2016 WL 1254023, at 5.

### 1.  Expert Qualification

Defendant argues that Bremer's experience as a licensed architect does not qualify him to render his opinion on retail displays.  Plaintiff argues that Bremer's professional and personal experiences qualify him to offer his expert opinions in this case.

"In analyzing an expert's qualifications, the court should: (1) examine the background of the witness to determine if he or she possesses any of the qualifications set forth in Rule 702; and (2) compare the witness' education or area of expertise with the subject matter of the proffered expert testimony." *Pearlman v. Cablevision Sys. Corp.*, No. 10-cv-4992, 2015 WL 9462104, at 8

(E.D.N.Y. Dec. 28, 2015) (citation omitted).  Typically, the courts look to the totality of the

witness's qualifications when making this assessment.  *Hollman v. Taser Int'l Inc*., 928 F. Supp.

2d 657, 667 (E.D.N.Y. 2013); *Fate v. Vill. of Spring Valley*, No. 11-cv-6838, 2013 WL 2649548,

at 1 (S.D.N.Y. June 13, 2013).  To that end, "[i]t is well-settled that an expert's opinions may be

properly based on personal experience rather than traditional scientific methods." *Stern v.

Shammas*, No. 12-cv-5210, 2015 WL 4530473, at *3 (E.D.N.Y. July 27, 2015); *see Pearlman*,

2015 WL 9462104, at 8 ("Expert qualification is appropriate on the sole basis of 'practical

experience' and a formal degree is not required.") (quoting *Argonaut Ins. Co. v. Samsung Heavy

Indus*. Co. Ltd., 929 F. Supp. 2d 159, 172 (N.D.N.Y. 2013))); *In re Mirena IUD Prod. Liab.

Litig*., 169 F. Supp. 3d 396, 412 (S.D.N.Y. 2016) ("Qualification may be based on a broad range

of knowledge, skills, and training." (citation and internal quotation marks omitted)).

Here, this Court determines that Bremer is qualified to opine on retail space and design

issues.  As Bremer's resume demonstrates, he has over thirty-four years of experience as a

licensed architect.  Mot. to Strike, Expert's CV, Ex. 11, Dkt. No. 31.  Bremer has also designed

retail spaces.  *Id*; Pl.'s Opp. to Mot. to Strike at 3, Dkt. No. 33.  From 1990 through 2003,

Bremer worked for several retail grocery store chains including Golub Corporation, Winn-Dixie

and Weis Markets Inc., where Bremer designed and planned the interiors of new and renovated

structures.  *Id*.  Bremer also worked on several projects for retail establishments such as Sam

Goody, L.L. Bean, Hit or Miss and Today's Man.  *Id*.  His resume further demonstrates, among

other things, his extensive experience as a safety expert in construction claims, building and site

designs, and safety standards for stairs, windows, floors, walls and retail displays.  *Id*.  Bremer

testified that he has "a professional and trained understanding of how people move about in those

retail spaces."  *Id*.  Accordingly, Bremer's opinions are within his area of expertise, particularly

considering both his professional and personal experience in the industry.  Correspondingly, Bremer is qualified to testify regarding what display design related decisions could have prevented or minimized Plaintiff's injuries.  *See Bennett v. Target Corporation*, 16-CV-5816 (ADS) (SIL), 2018 WL 5784354 at 6 (E.D.N.Y. Nov. 5, 2018) (holding that the plaintiff's architectural and design expert sufficiently qualified to serve as a retail design and safety expert in light of his industry knowledge, skill, and experience).  This Court does not conclude, however, that Bremer is qualified to render opinions concerning the specific cause of Plaintiff's injuries. *Id*.

Thus, the Court determines that Bremer is qualified to give his opinion on Defendant's retail display and whether it complied with safety standards.

### 2.  Reliability

Defendant argues that Bremer's opinion is not reliable because as it is not based on accurate facts or data.  Plaintiff argues that Bremer was unable to examine the display boxes that caused Plaintiff's accident because they no longer existed when Bremer was prepared to analyze them and because Defendant is no longer in possession of video depicting the actual accident.

With respect to reliability, the court should consider whether the expert's opinion: (i) is grounded in sufficient facts or data; (ii) is the product of reliable principles and methods; and (iii) indicates that the witness has applied the relevant principles and methods reliably to the facts of the case.  *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); *see also Stern*, 2015 WL 4530473, at 2 (observing that the court must inquire as to whether the expert opinion "is based upon reliable data and methodology"); *Vasquez v. City of New York*, No. 10 Civ. 6277, 2014 WL 4388497, at 12 (S.D.N.Y. Sept. 5, 2014) ("[T]he trial judge [has] the task of ensuring that an expert's testimony ... rests on a reliable foundation...."). The court's duty is to make a

"preliminary assessment" as to whether the reasoning or methodology supporting the testimony at issue is scientifically valid and properly applied. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97; *Lara*, 2016 WL 1254023, at 8.

The factors to consider include the ability to test the expert's methods and reasoning, whether the expert's theory has been subject to peer review and publication, the potential rate of error, and general acceptance in the scientific community. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. at 2796-97; *Lara*, 2016 WL 1254023, at 8 (citations omitted). These factors, however, are not a "definitive checklist," as the standard is flexible and the inquiry must suit the nature of the case. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *Lara*, 2016 WL 1254023, at 8 (collecting cases).

Here, Bremer's report contains opinions based upon his review of the case documents, applicable codes and industry standards, his education and training, as well as his thirty-four years of professional and personal experience as a licensed architect. *See* Def.'s Mot. to Strike, Bremer's Report at 1, Ex. I, Dkt. No. 31. Defendant argues that Bremer never examined the photograph of Defendant's retail display at issue, performed no independent or objective research, relied mostly on Plaintiff's testimony, erroneously concluded that the cardboard boxes were stacked on two pallets instead of one, and failed to address the fact that the retail display boxes were secured to each other using an interlocking tab system. Def.'s Mot. to Strike, Rep. Mem at 5-6. This Court disagrees. The photograph examined by Plaintiff was provided by Defendant in response to a discovery demand seeking information pertaining to the aisle where the subject incident occurred. *See* Def.'s Mot. to Strike, Bremer's Report at 1-2, Ex. I, Dkt. No. 31. The absence of any video evidence has prevented Plaintiff's expert from conducting a proper

examination and analysis of the accident-causing materials since Defendant itself recycled the video footage from November 19, 2017.

Accordingly, Bremer did not err in reaching the conclusion that the prototypical retail display was not maintained with the nationally recognized industry standards.  Any challenges to such measurements or other conclusions reached based on Bremer's conclusions and testimony goes to the weight of his testimony, not its admissibility, and may be raised on cross-examination during trial.  *See Sprayregen v. A. Gugliotta Dev*., Inc., 166 F. Supp. 3d 291, 301 (E.D.N.Y. 2016); *Daubert*, 509 U.S. at 596, 113 S.Ct. at 2798 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Thus, this Court determines that Bremer's report is based on accurate facts and data relevant to this litigation.

### 3.  Assist Trier of Fact

If the expert is qualified, and his or her opinion is sufficiently reliable, the court must then consider whether the testimony at issue will assist the trier of fact.  *Amorgianos*, 303 F.3d at 266 (citing *Campbell v. Metro. Prop. & Cas. Ins. Co*., 239 F.3d 179, 184 (2d Cir. 2001)).  "This requirement can be expressed as a question of 'fit'—whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Pearlman*, 2015 WL 9462104, at 7 (citation and internal quotation marks omitted).  By contrast, expert testimony is not useful "if it merely usurps […] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Id.*

The Second Circuit "is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992); *see Breezy Point Co-op., Inc. v. Cigna Prop. & Cas. Co*., 868 F. Supp. 33, 36 (E.D.N.Y. 1994) ("The function of informing the jury of the applicable law is reserved strictly for the court."); *but see Ebbert v. Nassau Cty*., No. 05-cv-5445, 2008 WL 4443238, at 12 (E.D.N.Y. Sept. 26, 2008) ("[F]actual conclusions may be included in an expert's testimony, even though those conclusions may embrace an ultimate issue to be decided by the jury." (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). Expert testimony is likewise inadmissible when it addresses "lay matters which a jury is capable of understanding and deciding without the expert's help[,]" *Andrews v. Metro N. Commuter R.R. Co*., 882 F.2d 705, 708 (2d Cir. 1989); or (ii) contradicts undisputed record evidence, *see Barrett v. Black & Decker (U.S.) Inc*., No. 06-cv-1970, 2008 WL 5170200, at *8 (S.D.N.Y. Dec. 9, 2008); *see also Grdinich v. Bradlees*, 187 F.R.D 77 at 82 (expert precluded where jurors did not need any "special training or expertise to understand whether ironing boards are safely displayed").

Here, the Court agrees with Defendant that Bremer's report contains numerous inadmissible conclusions of law.  For instance, Bremer opines that Defendant "[f]ailed to eliminate and/or guard a hazardous condition," and its "[f]ailure to maintain safe premises…". Expert Report at 8.  In addition, he concludes that the subject display was defectively designed which was the proximate cause of Plaintiff's injuries.  *Id.*  Such statements, among others, in Bremer's report, "usurp [both] the role of the trial judge in instructing the jury as to the applicable law [and] the role of the jury in applying that law to the facts before it," *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999), and are thus inadmissible.  *See Hygh*, 961 F.2d at 363.

Nevertheless, as articulated above, Bremer's report also contains numerous factual assertions and conclusions founded primarily upon his experience in the retail safety and design industry when he opines that Defendant failed to maintain a stable display in compliance with the industry standards.  *See* Bremer Report at 8.  These opinions could indeed assist the trier of fact in evaluating the central issue in this case, namely, whether Defendant's design of either the display, or aisle in question was defective.  *See e.g.*, *Bennett*, 2018 WL 5784354 at 8 (denying preclusion of architect's expert report and testimony because it included factual assertions about the safety standards of Target's display merchandize).

Thus, Bremer's report and testimony will assist the trier of fact and any improper legal conclusions can be redacted.  Accordingly, the Court finds no basis to preclude these opinions or any other strictly factual conclusions in Bremer's report.

## IV.     MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on the grounds that there is no issue of material fact and that it is entitled to judgment as a matter of law.  In support of its Motion, Defendant argues that it neither created any dangerous condition, nor had actual or constructive notice of the condition that led to Plaintiff's fall.  In her opposition, Plaintiff does not address these arguments fully, but instead requests that should Bremer's expert report and testimony be allowed in this action, the Court should re-consider Defendant's summary judgment motion and allow submissions so that Plaintiff is able to include findings from the expert testimony in her response.

In view of this Court's decision to allow Bremer's expert report and testimony in this action, Defendant's Motion for Summary Judgment must be re-filed.  Plaintiff is allowed to include findings from Bremer's report and testimony in her response.

Thus, this Court denies Defendant's pending Motion for Summary Judgment as moot and sets the following briefing schedule for a renewed Motion for Summary Judgment:  Defendant to serve the Motion on Plaintiff by April 29, 2022; Plaintiff to serve a response on Defendant by May 30, 2022; Defendant to serve a Reply and file the fully-briefed motion by June 17, 2022.

## V.   CONCLUSION

For the foregoing reasons, this Court:

A. Denies Defendant's Motion to Preclude Bremer's report and testimony because Bremer is qualified to render his expert opinions, which are relevant, based on accurate facts and data, and will assist the trier of fact in this litigation.

B. Denies Plaintiff's Motion for Sanctions against Defendant under Rule 37 because Plaintiff has not shown (1) that Defendant had a duty to preserve any video evidence prior to receiving Plaintiff's "litigation hold" letter in January 2018; (2) that Defendant had a culpable state of mind in failing to preserve any video evidence from the day of Plaintiff's fall; and (3) that the video was relevant to support Plaintiff's claims.  This Court also denies sanctions under its inherent powers because Plaintiff has not shown that Defendant acted without a colorable basis and in bad faith.

C. Denies Defendant's Motion for Summary Judgment as moot.

**SO ORDERED.**

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated:  Central Islip, New York
          March 30, 2022